# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-155

**STATE OF LOUISIANA**

**VERSUS**

**RODERICK JERMAINE CAWTHORNE, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-263-15
HONORABLE  STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Roderick Jermaine Cawthorne, Jr.**

**Michael Cade Cassidy**
**District Attorney**
**Thirty-First Judicial District Court**
**P. O. Box 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**Carla S. Sigler**
**Special Assistant District Attorney**
**901 Lakeshore Drive, Suite 845**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**SAUNDERS, Judge.**

On April 29, 2015, Defendant, Roderick Jermaine Cawthorne, Jr., was charged by grand jury indictment with one count of first degree murder, a violation of La.R.S. 14:30, and one count of obstruction of justice, a violation of La.R.S. 14:130.1. On August 17, 2015, the indictment was amended from one count of first degree murder to one count of second degree murder, in violation of La.R.S. 14:30.1(A)(2), and Defendant waived a formal reading of the bill of indictment. Through his counsel, Defendant entered a plea of not guilty, and requested a trial by jury.

A "Motion for Psychiatric Examination of Defendant for Competency and for Insanity and Notice of Insanity Defense" and a "Motion and Order for Sanity Commission" were filed by Defendant's counsel on September 22, 2015. On the same date, Defendant's counsel also filed a "Motion to Change Plea," and Defendant changed his plea to not guilty by reason of insanity. Defendant was evaluated, and the results were submitted to the court, after which Defendant was found competent to stand trial.

On June 26, 2017, following a trial by jury, Defendant was convicted of both the second degree murder and obstruction of justice charges. At the September 11, 2017 sentencing hearing, Defendant was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence as to the second degree murder charge and forty years at hard labor as to the obstruction of justice charge, to run consecutively to the second degree murder sentence, and Defendant was given credit for time served.

On September 14, 2017, Defendant filed a "Motion for Appeal and Designation of Record" in the trial court, which was granted on the same date.

## FACTS

On February 21, 2015, Vermilion Parish Sheriff's deputies responded to a call regarding a burned vehicle in an isolated area about ten miles from Lake Arthur, Louisiana, in Gueydan, Louisiana. Based on paperwork recovered from the vehicle, it was traced to Charles Raymond Talen, a seventy-four-year-old man who lived in Lake Arthur, Louisiana. Jefferson Davis Parish deputies where contacted, and they went to Mr. Talen's home to check on him. There they discovered his body lying on the floor covered in blood, and his hands and feet were duct taped and tied with rope.

Authorities determined that Defendant and Brett Hebert planned to rob Mr. Talen. After waiting for hours outside of his home, they called Mr. Talen and told him that he had a package at his gate, which he went outside to retrieve. Defendant and Hebert then confronted Mr. Talen, hit him, and entered the home with Mr. Talen at gunpoint.

Mr. Talen grabbed a revolver out of his desk and pointed it at Hebert. Armed with an AK-47, Hebert shot at the floor. Defendant then hit Mr. Talen several times, and Mr. Talen hit his head as he fell. Defendant and Hebert found Mr. Talen's safe and used one of his vehicles to take it from the home. They were able to open the safe with a crow bar and hammer. After retrieving gold coins and paperwork from the safe, they dumped it into a river. They also attempted to get rid of their clothes by dumping them into the river as well. They then placed the duct tape, ski masks, and other items they had used into Mr. Talen's car and set it on fire in an attempt to destroy the evidence.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:**

We will combine these assigned errors as they are interrelated. As such, we will adjudicate them under one heading.

In Defendant's first assignment of error, he alleges that the trial court erred when it ordered an eighteen-year-old offender to serve excessive consecutive sentences of life in prison without benefits for the second degree murder conviction and a maximum sentence of forty years at hard labor for the obstruction of justice conviction. He separates this assignment into three parts: a) the denial of parole for the second degree murder conviction was excessive; b) the maximum sentence of forty years for the obstruction of justice conviction was excessive; and c) the consecutive sentences are not justified by the record, the trial court failed to give reasons to support imposing consecutive sentences, and the imposition of consecutive sentences is excessive. We find no merit to Defendant's arguments.

In his second assignment of error, Defendant stated that should we find that his first assignment of error was precluded from review or limited to a bare excessiveness claim for failure to file a motion to reconsider sentence, then he was denied effective assistance of counsel because of this failure. We find that Defendant's claim is limited, so discussion of this and Defendant's claim of ineffective assistance of counsel follow.

This court recently discussed a similar claim in *State v. Green*, 16-938, p. 40-41(La.App. 3 Cir. 7/19/17) 248 So.3d 360, 385-86, *writ denied*, 17-1348 (La. 4/27/18), 239 So.3d 836:

3

[I]neffective assistance of counsel claims are usually raised in an application for post-conviction relief, but may be addressed on appeal when the record is sufficient to review them. [*State v.*] *Nargo*, [15-779 (La.App. 3 Cir. 6/1/16),] 193 So.3d [1263,] 1268. Additionally, a claim of ineffective assistance of counsel at sentencing is not cognizable on collateral review when the sentence imposed is within the authorized range of the sentencing statutes. *State v. Thomas*, 08-2912 (La. 10/16/09), 19 So.3d 466. Because the record is sufficient to review Green's ineffective assistance of counsel claim as to his counsel's failure to file a motion to reconsider sentence, and because Green is precluded from raising the claim on post-conviction, we will address the claim.

In *State v. Parker*, 16-1016 (La.App. 1 Cir. 2/17/17), 2017 WL 658256 (unpublished opinion), the first circuit stated the following regarding the ineffective assistance of counsel claim for failure to file a motion to reconsider sentence:

> Louisiana Code of Criminal Procedure article 881.1(E) provides that the failure to make or file a motion to reconsider sentence precludes a defendant from raising an excessive sentence argument on appeal . . . . In the interest of judicial economy, however, we will consider the defendant's excessive sentence argument, even without a motion to reconsider sentence, to address his claim of ineffective assistance of counsel. Failure to file a motion to reconsider sentence in itself does not constitute ineffective assistance of counsel. Nevertheless, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found.

*Parker*, 16-1016 at p. 21 (citations omitted).

The court in *Parker* proceeded with an excessive sentence review and ultimately found that the defendant failed to show a reasonable probability that his sentence would have been different had his trial counsel filed a motion to reconsider sentence. Following this same framework, we will first review Green's sentence for excessiveness.

Given the above, this court will follow this same framework.

*Excessive Sentence Review*

Louisiana courts have laid out the following guidelines with regard to constitutionally excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir.

4

1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

In *State v. Dorthey*, 623 So.2d 1276 (La.1993), the supreme court stated that the trial courts should abide by the legislatively mandated sentences unless such

5

sentences are unconstitutional. The legislature has imposed only one possible sentence for second degree murder. Louisiana Revised Statutes 14:30.1(B) requires that anyone convicted of second degree murder "shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."

> It is within the legislature's prerogative to determine the length of the sentence imposed for the crimes classified as felonies, and the courts are charged with applying these punishments unless they are found to be unconstitutional. *State v. Dorthey*, [623 So.2d 1276 (La.1993)]; *State v. Armstrong*, 32,279 (La.App.2d Cir.9/22/99), 743 So.2d 284, *writ denied*, 1999–3151 (La.4/7/00), 759 So.2d 92. The decision to assess mandatory life sentences is within the prerogative of the legislature. *State v. Parker*, 416 So.2d 545 (La.1982); *State v. Allen*, 41,548 (La.App.2d Cir.11/15/06), 942 So.2d 1244, *writ denied*, 2007–0530 (La.12/7/07), 969 So.2d 619.

> When there is a constitutional mandatory sentence, a trial court need not justify, under La. C. Cr. P. art. 894.1, a sentence it is legally required to impose. *State v. Baker*, 49,841 (La.App.2d Cir.5/20/15), 166 So.3d 1152, *writ denied*, 2015–1219 (La.3/4/16), 185 So.3d 745.

> In rare circumstances, a downward departure from a mandatory sentence may be warranted if the defendant shows, by clear and convincing evidence, that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. *State v. Johnson*, 1997–1906 (La.3/4/98), 709 So.2d 672; *State v. Dixon*, 42,594 (La.App.2d Cir.1/16/08), 974 So.2d 793, *writ denied*, 2008–0711 (La.10/10/08), 993 So.2d 1282, *cert. denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1092 (2009). Although courts have the power to declare a mandatory minimum sentence excessive under Article 1, § 20 of the Louisiana Constitution, this power should be exercised only in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. *State v. Ponsell*, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, *writ denied*, 2000–2726 (La.10/12/01), 799 So.2d 490; *State v. Baker, supra.*

*State v. Little*, 50,776, pp. 4-5 (La.App. 2 Cir. 8/10/16), 200 So.3d 400, 403, *writ denied*, 16-1664 (La. 6/16/17), 219 So.3d 341 (emphasis omitted).

Defendant alleges that his circumstances are exceptional and warrant a downward departure from the legislatively mandated sentence of life without benefits because "he was only eighteen at the time of these offenses and has no

6

criminal history. He has a young son. The opportunity to seek parole at some point in the future should have been granted." Defendant goes on to compare himself and his sentence to that of a juvenile offender, thus making a mandatory life sentence without benefits unconstitutional in his case pursuant to the ruling regarding life sentences for juvenile offenders in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012). Defendant essentially makes the same argument set forth in *State v. Monceaux*, 17-1052 (La.App. 3 Cir. 5/9/18) (unpublished opinion). Although the defendant in *Monceaux* did not point specifically to the denial of parole as the reason for excessiveness, he did allege that because of his youth and diminished mental capacity the imposition of a mandatory life sentence without benefits of probation, parole, or suspension of sentence was unconstitutionally excessive, and his attorney's failure to file a motion to reconsider sentence constituted ineffective assistance of counsel.

In *Monceaux*, this court noted that the defendant pointed to "no jurisprudence indicating *Miller* is applicable to anyone other than juveniles." *Monceaux*, 17-1052, p. 3. Here, Defendant also failed to point to such jurisprudence. Further, like the defendants in *Monceaux* and *Little*, Defendant's argument here is based on his youth. In both of those cases, just as here, the defendants were examined by commissions to determine their competence to stand trial, and all were found competent to proceed. *Monceaux*, 17-1052. *Little*, 200 So.3d 400. In light of the second circuit's ruling in *Little*, this court determined that the defendant in *Monceaux* also failed to prove that his circumstances necessitated a downward departure from the statutorily mandated life sentence. Given this court's ruling in *Monceaux*, we find that Defendant has not proven that his youth creates circumstances to make the mandatory denial of parole for a second degree murder conviction unconstitutionally excessive.

7

At the sentencing hearing the trial court gave its reasons for imposing the sentences, stating:

> The court has considered the following factors, as well as the nature of the present offense, in determining an appropriate sentence . . . .
>
> . . . .
>
> According to the Presentence Investigation, on February 21st, 2015, deputies from the Jefferson Davis Parish Sheriff's Department responded to the residence of Charles Raymond Talen on a welfare check requested by Vermilion Parish authorities after they discovered a brunt [sic] car with papers inside indicating it belonged to Mr. Talen. When they finally entered the house, they found Mr. Talen bound and bloody on the floor. They were unable to locate a pulse. Numerous interviews were conducted, and the Forensic Investigation Unit from Calcasieu Parish assisted in processing the crime scene. You were later arrested and charged with second degree murder and obstruction of justice. Several other people were charged in connection with this crime. On June 26th, 2017, you were found guilty by the Jefferson Davis petit jury of second degree murder and obstruction of justice. I'm going to file the Presentence Investigation into the record for further reference, if necessary.
>
> In Reviewing the Presentence Investigation, the Court takes note of the fact that you are 21 years of age, that you have a young son, and that this is your first felony conviction. This has been taken into consideration in mitigating against imposition of the maximum sentence in this matter. However, the Court can find no other mitigating factors. The Court will take notice that you still have failed to admit any responsibility or - - or involvement in this crime despite your conviction and despite forensic evidence linking you to the crime scene.
>
> Therefore, the Court sentences you to the Department of Corrections, State of Louisiana, to life imprisonment without the benefit of probation, parole, or suspension of sentence on the second degree murder. The Court has considered the factors. I was here when the evidence was presented. It was - - the burning of the car, the throwing away clothes, the dumping of the safe, the hiding of the money, and no remorse whatsoever in your actions, the Court is going to order that you serve 40 years at hard labor, the maximum sentence on the obstruction of justice, which sentence is to run consecutive to the sentence I have previously imposed.

In reviewing an excessive sentence claim, we look to the nature of the crimes. Second degree murder is classified as a crime of violence under La.R.S. 14:2. At sentencing, the trial court specifically noted that authorities found the victim "bound

and bloody, on the floor." Further, expert testimony during trial revealed that the victim died from "blunt force injuries of the head and neck" and detailed at least fifteen to twenty injuries to the victim, including bruises on his head, neck, and abdomen and lacerations on his scalp.

As set forth in La.R.S. 14:130.1, obstruction of justice is punishable by a maximum of forty years in prison if it involves a criminal proceeding in which the defendant could be sentenced to death or life imprisonment. This is a very lengthy sentence which indicates that obstruction of justice involving a very serious crime, like second degree murder, is also a serious offense.

Next, we look to Defendant's nature and background. The trial court ordered a pre-sentence investigation (PSI) which revealed that the defendant was twenty-one years of age at the time of the hearing, had a young son, had no juvenile criminal history, and had no adult criminal history. The trial court stated that it could find no other mitigating factors. Although Defendant was only eighteen at the time of the offense and had no prior criminal history, the trial court pointed to his refusal to take any responsibility or admit any involvement in the commission of the second degree murder, despite there being "forensic evidence" linking him to the scene as the reasons for imposing a life sentence.[1]

The trial court noted Defendant's actions during the commission of the offense, such as burning the victim's car, throwing Defendant's clothes into the river, disposing of the victim's safe, and burying the victim's money, and Defendant's lack of remorse, in sentencing Defendant to the maximum sentence of forty years for obstruction of justice to run consecutively to the life sentence. Although Defendant's background was favorable, as he had no prior criminal

---

[1]The trial court did not specify what forensic evidence it was referencing; however, the record shows that a bloodstain on an envelope in Mr. Talen's office matched the DNA profile from a blood sample received from Defendant.

9

history, his lack of remorse and refusal to take any responsibility along with his conduct during the commission of the offenses is also a reflection of his nature.

Finally, we look at the sentences imposed for similar crimes. Louisiana Revised Statutes 14:30.1(B) mandates a sentence of life imprisonment at hard labor without benefits for a conviction of second degree murder, so it follows that the vast majority of sentences imposed for other second degree murder convictions will be the same. This court has previously ruled in many cases that mandatory life without benefits for second degree murder is not unconstitutionally excessive. *See State v. Cofer*, 16-871 (La.App. 3 Cir. 4/5/17), 216 So.3d 313, *writ denied*, 17-1150 (La. 5/11/18), 241 So.3d 1014 (affirmed mandatory life sentence without benefits for second degree murder as constitutional despite defendant being a first time offender, college student, and mother); *State v. Chehardy*, 12-1337 (La.App. 3 Cir. 5/1/13), 157 So.3d 21 (affirmed mandatory life sentence without benefits for second degree murder as constitutional where defendant failed to show his circumstances warranted a downward departure from the mandatory minimum); *State v. Boyer*, 10-693 (La.App. 3 Cir. 2/2/11), 56 So.3d 1119, *writ denied*, 11-769 (La. 1/20/12), 78 So.3d 138,[2] (affirmed mandatory life sentence without benefits for second degree murder as constitutional where defendant failed to show his circumstances were unusual such that he should be entitled to a downward departure from the mandatory minimum); *State v. Adams*, 04-77 (La.App. 3 Cir. 9/29/04), 884 So.2d 694, *writ denied*, 04-2709 (La. 2/25/05), 894 So.2d 1131, *writ denied*, 04-2880 (La. 2/25/05), 894 So.2d 1132 (affirmed mandatory life sentence without benefits for second degree murder as constitutional where defendant failed to prove his circumstances warranted a downward departure from the mandatory minimum).

---

[2] Our Supreme Court granted certiorari on other grounds; however, it was subsequently dismissed as improvidently granted.

10

Louisiana courts have frequently affirmed forty-year maximum sentences for obstruction of justice convictions. *See State v. Ayala*, 17-1041 (La.App. 3 Cir. 4/18/18), 243 So.3d 681 (upheld a maximum forty-year sentence for obstruction of a murder investigation where the defendant burned and bleached the evidence and buried the victim's body); *State v. Roberson*, 40,809 (La.App. 2 Cir. 4/19/06), 929 So.2d 789 (upheld a maximum forty-year sentence for obstruction of justice for a defendant convicted of second degree murder where the victim's body was found thirty miles from the murder site, and the victim's DNA was found in the trunk of the defendant's vehicle); *State v. Royal*, 03-439 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, *writ denied*, 03-3172 (La. 3/19/04), 869 So.2d 849 (affirmed defendant's forty-year sentence for an obstruction of justice conviction in a second degree murder case where the defendant disposed of the murder weapon in a river); *State v. McKnight*, 98-1790 (La.App. 1 Cir. 6/25/99), 739 So.2d 343, *writ denied*, 99-2226 (La. 2/25/00), 755 So.2d 247 (affirmed a forty-year sentence for obstruction of justice where evidence established that the defendant, a first-time felony offender, disposed of her twenty-two month old babysitting charge's body by throwing it from a car on the bridge into the water).

Additionally, in *Roberson*, 929 So.2d 789, the second circuit found that the trial court did not err in ordering the defendant's life sentence for second degree murder and forty-year sentence for obstruction of justice to be served consecutively.

> When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.Code Crim.P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. *State v. Robinson*, 33,921 (La.App. 2d Cir. 11/01/00), 770 So.2d 868.

*Id.* at 804.

Defendant argued in his brief that the court failed to justify an imposition of consecutive sentences. Defendant pointed to this court in *State v. Hurst*, 10-1204 (La.App. 3 Cir. 4/13/11), 62 So.3d 327, *writ denied*, 11-975 (La. 10/21/11), 73 So.3d 383, where the court stated:

> Before the trial court may impose consecutive sentences, it "must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1." *State v. Dempsey,* 02–1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040 (citing *State v. Pittman,* 604 So.2d 172 (La.App. 4 Cir.1992), *writ denied,* 610 So.2d 796 (La.1993)). The following factors may be considered:
>
>> the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the defendant's apparent disregard for the property of others, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain.
>
> *State v. Thibodeaux,* 05–1187, pp. 8–9 (La.App. 3 Cir. 3/1/06), 924 So.2d 1205, 1211, *writ denied,* 06–700 (La.10/6/06), 938 So.2d 65 (quoting *State v. Coleman,* 32,906, p. 42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247–48, *writ denied,* 00–1572 (La.3/23/01), 787 So.2d 1010) (citations omitted).

As previously noted, in its reasons at the sentencing hearing and its "Reasons for Sentencing" filed on September 11, 2017, the trial court stated that it imposed a sentence of life imprisonment without benefits for second degree murder and forty years at hard labor for obstruction of justice, and ordered them to be run consecutively, because of the nature of the offense and Defendant's failure to take responsibility for the crime.

These reasons adequately set forth justification for imposing a consecutive sentence as required under *Hurst* as they address specific factors such as the nature and severity of the crime and Defendant's refusal to admit any fault. In light of these considerations, we cannot say that the Defendant's sentences to life imprisonment at

12

hard labor without benefits for second degree murder and forty years at hard labor, to be served consecutively, for obstruction of justice were excessive.

*Ineffective Assistance of Counsel*

Under the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), in order to prevail on a claim of ineffective assistance of counsel, Defendant must show counsel's performance was deficient; then, he must show the deficiency prejudiced him. We find no merit to the assertion by Defendant that his counsel was ineffective.

The defendant in *Monceaux* also claimed "ineffective assistance of counsel for failure to file a motion to reconsider." *Monceaux*, 17-1052, p. 3. "As failure to prove prejudice renders the question of deficient performance moot, we will review Defendant's two assignments of error simultaneously. If Defendant cannot prove a downward departure from the mandatory life sentence for aggravated rape was warranted, he cannot prove prejudice under *Strickland*, 466 U.S. 668." *Monceaux*, 17-1052, p. 4. As previously discussed, Defendant has not proven that he is entitled to a downward departure from the legislatively-mandated sentence of life without parole for a second degree murder conviction, that the forty-year sentence for obstruction of justice was excessive, or that the trial courts order that the two sentences be served consecutively was either not justified by the record or excessive. Because of this, he has not shown prejudice as required under the second prong of the two-part test in *Strickland*, 466 U.S. 668. In *Monceaux*, 17-1052, this court held that such a failure meant that the defendant there also failed to show prejudice thus meaning his claim of ineffective assistance of counsel also failed.

In light of this court's holding in *Monceaux*, 17-1053, the fact that here Defendant also failed to prove that his circumstances necessitated such a departure from the mandated sentence, failed to prove that his sentence for obstruction of

13

justice was excessive, failed to prove that the consecutive sentences were not justified on the record or excessive, and considering that the reasons the court stated for imposing the sentences make it unlikely that the court would have adjusted the sentences if a motion to reconsider had been filed, we find that Defendant's claim of ineffective assistance of counsel likewise fails.

**ASSIGNMENT OF ERROR NO. 3:**

Defendant argues in his final assignment of error that the trial court erred in failing to make a factual finding that he was competent to proceed before moving forward with the trial in this case. This claim lacks merit.

At a contradictory hearing on July 6, 2016, reports by Dr. Patrick C. Hayes and Dr. Alfred Buxton detailing their evaluations to determine Defendant's competency were submitted to the court. In his brief, Defendant claims that although the reports entered into evidence found him to be competent to proceed, the trial court was required to make its own finding on the record before proceeding with the trial.

The supreme court has stated, "[a]lthough it may be impossible in a pretrial competency hearing to avoid reliance upon psychiatric prediction concerning the accused's capabilities, the trial court may not rely so extensively upon medical testimony as to commit the ultimate decision of competency to the physician." *State v. Bennett*, 345 So.2d 1129, 1137 (La.1977). Louisiana Code of Criminal Procedure Article 647 addresses the determination of a defendant's capacity to proceed:

> The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed

14

may be introduced at the hearing by the defense and by the district attorney.

In *State v. Odenbaugh*, 10-268, pp. 7-8 (La. 12/6/11), 82 So.3d 215, 228, *cert. denied*, 568 U.S. 829, 133 S.Ct. 410 (2012), the supreme court said:

> In evaluating the legal capacity of a criminal defendant, this Court, noting [*State v.*] *Bennett*, [345 So.2d 1129 (La. 1977)], explained that the trial court's decision regarding a defendant's competency to stand trial "should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of the decision with which the defendant is faced." *State v. Carmouche,* 01–0405 (La.5/14/02), 872 So.2d 1020, 1039. In Louisiana, a judicial examination of a defendant's competency has focused primarily on whether a defendant "understands the nature of the charge and can appreciate its seriousness." *See*, *Bennett*, 345 So.2d at 1138. Additionally, when a defendant's ability to assist in preparing his defense is at issue, the following questions must be considered:
>
>> whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
>
> *Carmouche,* 872 So.2d at 1039 (*citing Bennett*, supra).
>
> In the exercise of its discretion, the trial court may consider both lay and expert testimony when deciding whether reasonable grounds exist for evaluating a defendant's competency. [*State v.*] *Martin,* 00–0489[,] p. 2 [(La. 9/22/00),] 769 So.2d [1168,] 1169. An appellate court owes the trial court's determinations as to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. [*State v.*] *Bridgewater,* 00–1529[,] p. 6 [(La. 1/15/02),] 823 So.2d [877,] 888.

The trial court stated that it reviewed the reports prior to filing them into the record, that the reports stated that Defendant was competent to stand trial and was competent at the time of the offense, and that he could assist counsel. Although the

trial court did rely on the reports from the doctors, the court reviewed the reports independently. In the reports, it is clear that Defendant was asked the necessary questions to determine his competency, and the trial court stated that it reviewed them, stating:

> All right. Well, the Court has reviewed the reports. The report states that Mr. Cawthorne, the defendant, is competent. Of course, he was also competent at the time of the offense. He can assist counsel.
>
> So, at this time, the Court is going to go forward with the proceedings in this matter.

The trial court, therefore, did make a determination of competence to proceed on the record. Accordingly, this assignment of error lacks merit.

## DECREE:

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**